United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 25, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 04-70013

ROBERT DALE ROWELL,

Petitioner-Appellant,

versus

DOUGLAS DRETKE, Director, Texas Department of
Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

Petitioner Robert Dale Rowell ("Rowell") was convicted and sentenced to death in Texas state court for the capital murder of Raymond David Mata. Rowell filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 2254. The district court denied Rowell's petition. Rowell now requests a certificate of appealability ("COA") from this Court pursuant to 28 U.S.C. § 2253(c)(2), seeking to appeal the district court's denial of habeas

relief.  To begin, this Court GRANTS Rowell's motion for leave to file a reply to Respondent's opposition to request for COA and further GRANTS Rowell's motion for leave to file oversize reply.

For the reasons detailed below, we DENY Rowell's application for COA because he has failed to make a substantial showing of the denial of a constitutional right as to his claims:  (1) that his constitutional rights were violated when the trial court refused to define for the jury the term "society" in the future dangerousness special issue of the punishment charge; and (2) that Texas law is unconstitutional because it fails to assign a proper burden of proof on the special issues and fails to provide for appellate review of the mitigating evidence.

## BACKGROUND

Rowell was convicted and sentenced to death in April 1994 for the capital offense of murdering Raymond David Mata while in the course of committing or attempting to commit robbery.  On direct appeal in December 1996, the Texas Court of Criminal Appeals ("TCCA") affirmed Rowell's conviction and sentence.  In October 1997, the Supreme Court denied Rowell's petition for writ of certiorari.

Thereafter, in April 1998, Rowell filed a state application for writ of habeas corpus.  The trial court entered findings of fact and conclusions of law recommending the denial of relief.  In September 2002, the TCCA adopted the trial judge's findings and

conclusions and denied Rowell habeas relief. Rowell then filed a federal habeas petition in the district court in September 2003. Respondent filed an answer and a motion for summary judgment. In February 2004, the district court granted Respondent's motion, dismissed Rowell's petition, entered a final judgment, and denied Rowell a COA on his claims. Rowell timely filed the instant application for COA.

## DISCUSSION

Rowell filed his § 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, his petition is subject to the procedures imposed by AEDPA; Rowell's right to appeal is governed by the COA requirements of § 2253(c). *See **Slack v. McDaniel***, 529 U.S. 473, 478 (2000).

Under AEDPA, a petitioner must obtain a COA before an appeal can be taken to this Court. 28 U.S.C. § 2253(c); *see also **Miller-El v. Cockrell***, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."). When a habeas petitioner requests permission to seek appellate review of the dismissal of his petition, this Court limits its examination to a "threshold inquiry into the underlying merit of his claims." ***Miller-El***, 537 U.S. at 327. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in

3

support of the claims.  In fact, the statute forbids it." *Id.* at 336.

A COA will be granted if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Meeting this standard requires a petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks and citation omitted).  At issue is the debatability of the underlying constitutional claim, but not the resolution of that debate.  *Id.* at 342.  "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338.

When the district court denies a petitioner's petition on procedural grounds without reaching the underlying constitutional claim, a COA should issue if the petitioner demonstrates both that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling *and* that reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right. *Slack*, 529 U.S. at 478.  In death penalty cases, doubts on whether a COA should issue are resolved in the petitioner's favor. *Hernandez v. Johnson*, 213

4

F.3d 243, 248 (5th Cir. 2000).

**Whether the district court's procedural determination as to Rowell's claim based on the trial court's refusal to define "society" for the jury is debatable.**

Rowell challenges the trial court's refusal to define the term "society" used in issue no. 1 of the special issues submitted to the jury during the penalty phase of his trial.[1]  Rowell argues the

_____

[1]Special issue no. 1 stated:

Do you find from the evidence beyond a reasonable doubt that there is a probability that the Defendant, Robert Dale Rowell, would commit criminal acts of violence that would constitute a continuing threat to society?

During the jury's deliberations, it sent out the following note asking for clarification on the use of the term "society" in special issue no. 1:

Is the "society" we consider in Special Issue No. 1, only the one in which the Defendant will live, or does it include the society in which he will not live (considered as if he were living in the broader society)?

ie – Can we receive further instruction or definition re: "society"?

The trial judge answered the jury:

Ladies and Gentlemen:

I am prohibited by law from expanding on the Court's charge.

Joe Kegans.

The jury answered special issue no. 1 with "yes."  Special issue no. 2 asked:

Do you find from a preponderance of the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the Defendant's character and background, and the personal moral culpability of the Defendant, Robert Dale Rowell, that there is a sufficient mitigating circumstance or

trial court should have responded to the jury's note by instructing them to consider the interests of both the prison population and free society when answering special issue no. 1.  Rowell contends the trial judge instead erroneously informed the jury that he was prohibited by law from expanding the jury charge.  Rowell asserts the judge's *ex parte* and contradictory post-argument jury instruction violated Texas procedural law and his Sixth, Eighth, and Fourteenth Amendment rights.  Rowell relies on **Bollenbach v. United States**, 326 U.S. 607 (1946), and **United States v. Stevens**, 38 F.3d 167 (5th Cir. 1994), for the proposition that a trial court has a constitutional duty to "expand on the charge" in response to a jury note.

In addition, Rowell challenges the interaction of the judge's alleged unconstitutional reply with the instruction that the jury could not consider how long Rowell could be confined if they sentenced him to life imprisonment.[2]  Rowell argues there is no way of knowing in what way jurors were confused about the definition of

_____

    circumstances to warrant that a sentence of life imprisonment rather than a death penalty be imposed?

The jury answered special issue no. 2 with "no."

    [2]The given parole law instruction disallowed jury consideration and discussion of "any possible action of the Board of Pardons and Paroles Division of the Texas Department of Criminal Justice or of the Governor, or how long the Defendant would be required to serve to satisfy a sentence of life imprisonment."  Texas law now allows the trial court to instruct capital juries on the parole implications of a life sentence.  TEX. CRIM. PROC. CODE ANN. art. 37.071 § (e)(2)(Vernon Supp. 2004).

6

"society" in the context of the parole law instruction; they may have excluded prison society from their definition of "society."

Rowell also challenges the TCCA's standard of review used to assess the trial court's reply to the jury's question. Rowell argues a COA should issue because the district court failed to address this issue. Rowell relies on *Boyde v. California*, 494 U.S. 370 (1990), and contends full briefing would allow him to show there is a reasonable possibility that the trial court's incorrect reply prevented consideration of the constitutionally relevant evidence that he is not a danger to prison society.

Rowell argues that despite any procedural default related to the jury instruction issue, the federal courts should intervene when state courts interpret state law so as to evade consideration of a federal issue. Rowell alternatively contends his default should be excused because he did not have an opportunity to object to the trial court's answer to the jury note due to the court's communication to the jury being made *ex parte* and in secret. Rowell stresses he was prejudiced by the trial court's response because there is no way to know what a jury properly instructed on the definition of "society" would have done.

Respondent replies that the district court correctly determined that Rowell's challenge to the trial court's refusal to define "society" is procedurally defaulted because he objected to the trial court's response for the first time in his state habeas

7

petition.    Respondent argues the state habeas court properly concluded that Rowell defaulted his claim based on the Texas contemporaneous objection rule.    *See* ***Barrientes v. Johnson***, 221 F.3d 741, 779 (5th Cir. 2000) (noting that the failure to timely object waives any error in jury instructions unless so prejudicial no instruction could cure the error).    Respondent maintains this Court has consistently upheld this Texas procedural rule as an independent and adequate state ground that procedurally bars federal habeas review of a petitioner's claims.    *See* ***Sharp v. Johnson***, 107 F.3d 282, 285-86 (5th Cir. 1997); ***Nichols v. Scott***, 69 F.3d 1255, 1280 n.48 (5th Cir. 1995).

Respondent contends Rowell cannot show cause to excuse his procedural default for three reasons.    First, Rowell presented no evidence showing the trial judge did not follow the typical procedure of addressing the matter in open court.    TEX. CODE CRIM. PROC. art. 36.27.[3]    Second, Rowell at essence is arguing that the

---

[3]Article 36.27 provides, in part:

When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant

8

state court incorrectly interpreted Texas procedural law by finding he defaulted his claim; it is not the role of the federal habeas court to reexamine state-court determinations of state-law questions. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Finally, Rowell had a duty to preserve any error in the proposed charge's definition of "society" in writing before the charge was read to the jury. *See* TEX. CODE CRIM. PROC. arts. 36.14, 36.15. In addition, Respondent stresses Rowell cannot establish prejudice and has not alleged actual innocence of capital murder or of his death sentence for miscarriage of justice.

The district court here noted that the state court explicitly found that Rowell had defaulted his jury instruction claim under Texas's contemporaneous-objection rule. The court relied on this Circuit's clear and consistent statement "that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999); *see also Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003). The district court then continued on to a cause and prejudice analysis of Rowell's circumstances. The court

---

and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.

TEX. CODE CRIM. PROC. art. 36.27.

9

concluded that Rowell made no argument that cause and prejudice existed to overcome the state procedural bar; he only disputed, based on the silent record, whether he in fact defaulted his claim under state procedural law.  The court cited **Estelle** for the proposition that reexamining state court determinations of state law issues is not proper on federal habeas.  502 U.S. at 67-68.

The district court then considered the merits of Rowell's jury instruction claim, apart from the procedural bar, coming to the conclusion that it was bound by Supreme Court and Fifth Circuit caselaw allowing Texas to withhold parole eligibility information from its capital juries and by this Court's specific holding that Texas's use of the language "continuing threat to society" in the future dangerousness special issue is "not so vague as to require clarifying instructions."  **James v. Collins**, 987 F.2d 1116, 1120 (5th Cir.), *cert. denied*, 114 S. Ct. 30 (1993).  The court thus found no reason to disturb Texas's use of the "continuing threat to society" special issue.

Here, our Circuit's caselaw forecloses us from reviewing Rowell's barred jury instruction claim.  *See, e.g.,* **Sharp**, 107 F.3d at 285-86 (explaining that petitioner's "argument that the Texas contemporaneous objection rule is not an independent and adequate state ground upon which to base a procedural bar to federal review" was foreclosed by **Amos v. Scott**, 61 F.3d 333 (5th Cir. 1995)).  Based upon the two-prong threshold inquiry this Court performs

10

under *Slack*, we find reasonable jurists could not debate whether the district court was correct in its ruling of procedural default based on the independent and adequate state bar under the Texas contemporaneous objection rule, and in its findings of no cause and prejudice to excuse the default. We therefore do not need to address the possible validity of Rowell's claims related to the jury instruction as he has not met one of the required prongs under *Slack*. 529 U.S. at 485 (encouraging courts to analyze the procedural prong first where possible).

**Whether the district court's denial of relief based on Rowell's challenges to the mitigation special issue is debatable.**

Rowell also objects on appeal to Texas's use of special issue no. 2, the mitigation special issue. Rowell argues this special issue is unconstitutional because Texas law fails to assign a burden of proof. Rowell also contends this special issue is unconstitutional because it is not subject to appellate review of the sufficiency of the mitigating evidence. Rowell also made the argument (now foreclosed by *Schriro v. Summerlin*, 124 S. Ct. 2519 (2004)) that *Ring v. Arizona*, 536 U.S. 584 (2002), is a new substantive rule of criminal law that should be given retroactive effect on collateral review. Rowell insists that just as *Ring* should be construed to require Texas to provide for some burden of proof on whether a sufficient mitigating circumstance has been proven, the Constitution also entitled him to have the TCCA review whether there was evidence to support the jury's answer.

11

Respondent replies that there is no doubt Texas's special issues are constitutional. *See* **Jurek v. Texas**, 428 U.S. 262, 268-71 (1976). Respondent stresses that here the jury at the guilt-innocence phase first found beyond a reasonable doubt that Rowell was guilty of the intentional murder of Raymond Mata and that the murder occurred in the course of Rowell's committing or attempting to commit robbery. During the punishment phase, the jury then answered "yes" to the question of whether Rowell would pose a continuing threat to society, thereby finding that the State had met its burden of proving Rowell's future dangerousness to society beyond a reasonable doubt.[4] Consistent with Supreme Court precedent, Respondent argues this determination – whether a defendant falls within the narrowed class of death-eligible defendants – is properly subject to review by the TCCA. *See, e.g.,*

---

[4]The State presented evidence pertaining to the wanton and callous disregard for human life Rowell exhibited through the facts of his crime, as related by the district court:

[Rowell] came to the home of people with whom he was supposedly friends in search of drugs and money. While he probably could have gotten what he wanted with very little resistance from Wright due to his size, [Rowell] chose instead to beat him in the head with a claw hammer. Then, still receiving no resistance from any of the victims, [Rowell] marched all three into the bathroom and shot them. One of the victims also had signs of continued beatings after he was shot. [Rowell] then proceeded to take a shower and clean himself up.

The State also presented evidence that Rowell killed a fellow inmate while in the penitentiary by stabbing him multiple times in the chest with a homemade knife.

12

*Swearingen v. State*, 101 S.W.3d 89, 95-98 (Tex. Crim. App. 2003) (reviewing sufficiency of evidence on conviction); *Guevara v. State*, 97 S.W.3d 579, 581 (Tex. Crim. App. 2003) (reviewing sufficiency of evidence on future dangerousness). Respondent contends the mitigation special issue satisfies the Eighth Amendment's requirements for the individualized selection decision because it allows the jury to "consider relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime." *Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *see also Franklin v. Lynaugh*, 487 U.S. 164, 182 (1988) (noting Texas's special issues sufficiently allow for jury discretion to consider mitigating aspects).[5]

In addition, Respondent maintains *Ring* has no application to Rowell's case because there the Supreme Court did not contemplate the Sixth Amendment's "reasonable doubt" requirement to a capital sentencing jury's findings regarding mitigating factors; *Ring* focused exclusively on certain judicial findings regarding aggravating factors. 536 U.S. at 597 n.4; *see also Apprendi v. New*

---

[5]Here, the jury was presented testimony by Rowell's brother, a psychiatrist, two Texas Department of Criminal Justice employees, and two prison ministry counselors. They testified that: Rowell was a good brother, son, and grandson; he was a good employee; he had, with one exception of killing while incarcerated, a relatively clear prison record; he found religion while incarcerated; he was depressed and introverted; and he was previously a chronic drug user who would not be violent when free from the influence of drugs.

13

*Jersey*, 530 U.S. 466, 490 n.16 (2000) (noting distinction between "facts in aggravation of punishment and facts in mitigation"). Respondent argues Rowell cannot rely on *Ring* because that case did not address the constitutional issue he presents. Respondent contends that unlike the sentencing schemes challenged in *Ring* and *Apprendi*, the Texas mitigation special issue does not operate as "the functional equivalent of an element of a greater offense." *Apprendi*, 530 U.S. at 494 n.19. Moreover, the trial judge has no fact-finding role in a capital murder case under Texas law. TEX. CRIM. PROC. CODE ANN. art. 37.071 § 2(e). Respondent also stresses the Supreme Court does not require the jury to make its individualized determination of the defendant's moral culpability in any particular way, as long as it is allowed to judge what is mitigating and in what way. *See, e.g., Franklin*, 487 U.S. at 179. Respondent argues the Texas mitigation special issue serves its constitutionally mandated function and Rowell's reading of *Ring* would present the absurd circumstance of requiring prosecutors to prove the absence of mitigating circumstances beyond a reasonable doubt. Respondent also emphasizes this Court has consistently rejected the claim that a capital defendant is entitled to appellate review of the mitigating evidence. *See Woods v. Cockrell*, 307 F.3d 353, 359-60 (5th Cir. 2002); *Johnson v. Cockrell*, 306 F.3d 249, 256 (5th Cir. 2002), *cert. denied*, 538 U.S. 926 (2003).

14

Moreover, Respondent argues that Rowell's claims related to the mitigation special issue (lack of burden of proof and of appellate review) are barred from federal habeas review under *Teague v. Lane*, 489 U.S. 288, 310 (1989), because he argues for new rules of constitutional law. Moreover, to the extent Rowell relies on *Ring* for his claims, the Supreme Court has held *Ring* is not retroactive. *Summerlin*, 124 S. Ct. at 2526.

In *Apprendi*, the Supreme Court held the Sixth Amendment and due process require: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Court thus invalidated as a violation of the Fourteenth Amendment a New Jersey state hate crime statute that authorized an increase in the defendant's maximum prison sentence based on the judge's finding by a preponderance of evidence that the defendant acted with the purpose to intimidate the victim based on particular characteristics of the victim. *Id.* at 491-93.

The Supreme Court relied on *Apprendi* in *Ring* to overrule part of Arizona's capital sentencing scheme, which had provided that trial judges determine the presence or absence of aggravating factors required by Arizona law for imposition of the death penalty, and which had been previously upheld by *Walton v. Arizona*, 497 U.S. 639 (1990). *Ring*, 536 U.S. at 609. The Sixth Amendment

15

requires that "[c]apital defendants, no less than noncapital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 589. However, the Supreme Court underscored that Ring had made no Sixth Amendment claim with respect to mitigating circumstances. *Id.* at 597 n.4. Recently, the Supreme Court in *Summerlin*, definitively held that *Ring* announced a new procedural rule which does not apply retroactively to cases already final on direct review. 124 S. Ct. at 2526.

The district court explained that no burden of proof exists for either the defendant or the State to prove or disprove mitigating evidence at the punishment phase. This is because the Supreme Court recognizes an important distinction between "facts in aggravation of punishment and facts in mitigation." *Apprendi*, 530 U.S. at 490 n.16. The court concluded that Texas's death penalty practice does not violate *Apprendi* or its extension by *Ring* because the jury in Texas is the entity that determines death eligibility beyond a reasonable doubt, not a judge. Moreover, no Supreme Court or Fifth Circuit authority requires the State to prove the absence of mitigating circumstances beyond a reasonable doubt. The district court also noted (pre-*Summerlin*) that it could not rule otherwise except by creating a new rule of constitutional law in violation of *Teague*. The court thus determined that the TCCA's decision to summarily dismiss Rowell's burden of proof complaint

16

was not contrary to, or an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d)(1).  The court also determined Rowell had not distinguished significant Fifth Circuit caselaw repeatedly rejecting his argument that the Constitution requires the TCCA to review mitigating evidence.  *See, amongst others,* ***Woods***, 307 F.3d at 359-60; ***Beazley v. Johnson***, 242 F.3d 248, 261 (5th Cir.), *cert. denied*, 122 S. Ct. 329 (2001).  Thus, the district court concluded the state court's refusal to subject Rowell's mitigation evidence to appellate review withstood AEDPA review.  *See* 28 U.S.C. § 2254(d)(1).

Here, based upon the limited threshold inquiry this Court performs under the mandate of ***Miller-El***, we find reasonable jurists would not be able to debate whether this issue should have been resolved in a different manner by the district court.  No Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof.  Circuit precedent has specifically rejected the argument that there is a constitutional requirement that mitigation special issue evidence be subject to appellate review by the state.  ***Woods***, 307 F.3d at 359-60 (continuing to hold that the TCCA's refusal to review mitigating evidence is "within the ambit of federal law as interpreted by the Supreme Court").  In addition, we find that any argument premised upon an application of ***Ring*** is foreclosed as to Rowell because his conviction was final upon direct review in

17

October 1997 before *Ring* was announced in June 2002, *see* 28 U.S.C. § 2244(d)(1)(A), and because *Summerlin* has further clarified the nonretroactivity of *Ring*, 124 S. Ct. at 2526.

**Whether the due process argument raised by Rowell's recently granted reply to Respondent's opposition to COA renders his special issue claims debatable.**

We now address Rowell's argument, first raised in his reply to Respondent's opposition to COA, that the post-COA decisions in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *Summerlin* compel the conclusion that special issue no. 1 is fatally defective. Rowell also argues that in light of *Blakely*, it is at least debatable that the "probability of a continuing threat" factor violates the reasonable doubt standard required by the due process clause of the Fourteenth Amendment.

The Supreme Court in *Blakely* held that the Washington state trial court's sentencing of a defendant for more than three years above the 53-month statutory maximum of the standard range for his offense, on the basis of the sentencing judge's finding that defendant acted with deliberate cruelty, violated the defendant's Sixth Amendment right to trial by jury. 124 S. Ct. at 2537, 2543. "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." *Id.* at 2537 (internal quotation marks and citation omitted). *Blakely* was a further clarification of the Court's

18

longstanding "commitment to *Apprendi*."  124 S. Ct. at 2539.

The Supreme Court in *Blakely* did not address in any way the due process implications of Texas's special issues on future dangerousness and mitigation.  *Blakely* directly addressed how Washington's sentencing scheme in the context of judge-made factual findings violated the Sixth Amendment.  124 S. Ct. at 2537, 2543. Texas's use of special issue no. 1 in the punishment phase of Rowell's capital case, which required the jury to answer "yes" only if the State had proven "beyond a reasonable doubt that there is a probability that [Rowell] would commit criminal acts of violence that would constitute a continuing threat to society," does not violate *Blakely*, *Apprendi*, or *Ring*.  Accepting Rowell's argument that special issue no. 1 is unconstitutional because the term "probability" swallows the reasonable doubt standard under an extension of *Apprendi* and *Ring* by *Blakely* would be a violation of *Teague*.  *See* 489 U.S. at 316.  Moreover, nothing in *Blakely* requires that special issue no. 2 be subjected to the "beyond a reasonable doubt" burden of proof.  Accepting such an argument also would create a new constitutional rule violating *Teague*.  *See* 489 U.S. at 316.  Therefore, we find that reasonable jurists could not debate the following:  Rowell's petition has not stated a valid claim of the denial of a constitutional right on this issue.  *See* 28 U.S.C. § 2253(c)(2); *Slack*, 529 U.S. at 478.

**CONCLUSION**

19

Having carefully reviewed the record of this case and the parties' respective briefing, for the reasons set forth above, we conclude Rowell has failed to satisfy this Court that reasonable jurists would find the district court's resolution of the issues debatable. Rowell has also failed to show it is debatable that his additional due process claims adequately stated the denial of any constitutional right. Therefore, we DENY Rowell a COA. Motions **GRANTED**. COA **DENIED**.