# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-70013

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2018

Lyle W. Cayce
Clerk

ROBERT SPARKS,

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-469

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

Robert Sparks was convicted and sentenced to death for the 2007 murder of his wife and two step-sons. Sparks filed a federal habeas petition pursuant to 28 U.S.C. § 2254, asserting, *inter alia*, violations of his Eighth Amendment and Due Process rights, his right to an impartial jury, and cumulative error. After a thorough review, the district court denied the petition and did not certify any questions for appellate review. Sparks now seeks a certificate of

---

*Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-70013

appealability (COA) from this court pursuant to 28 U.S.C. § 2253(c)(2).  For the following reasons, Sparks's COA application is DENIED.

## BACKGROUND

### 1. Factual

Robert Sparks was convicted of stabbing his wife and 9- and 10-year-old step-sons to death in September 2007.  *Sparks v. Texas*, slip op. No. AP-76,099 (Tex. Crim. App. October 20, 2010). Following the murders, Sparks raped his 12- and 14-year-old step-daughters at gunpoint in the same room as two of the bodies.  *Id.*  Sparks fled to his ex-girlfriend's home immediately after committing his crimes, at which point he called the police and confessed.  He then traveled from Dallas to Austin on a Greyhound bus, using a ticket purchased under an alias.

Sparks returned to Dallas a few days later and called the police again, this time to ask if they had recovered audiocassette tapes he left in his home. *Sparks*, slip op. No. AP-76,099, at 2-5.  He told the police that the recordings proved that his wife and step-sons were conspiring to poison him.  The police located the tapes, but they contained only gibberish.  Sparks was arrested shortly thereafter.

### 2. Procedural

Sparks was charged and convicted of capital murder in state criminal court, and sentenced to death in state criminal court, and an automatic direct appeal to the Texas Court of Criminal Appeals followed.  The Court of Criminal Appeals affirmed Sparks's conviction and sentence, *Sparks v. Texas*, slip op. No. AP-76,099 (Tex. Crim. App. October 20, 2010), and the Supreme Court denied certiorari, *Sparks v. Texas*, 131 S. Ct. 2152 (2011).  While Sparks's direct appeal was pending, he filed his state habeas petition. *Ex Parte Sparks*, No. 76,786-01, 2011 WL 6293529 at *1 (Tex. Crim. App. Dec. 14, 2011).  The state court entered Findings of Fact and Conclusions of Law, which the Texas

2

No. 18-70013

Court of Criminal Appeals adopted. *Id.* The Court of Criminal Appeals denied relief, *id.*, and the Supreme Court denied certiorari. 133 S. Ct. 526 (2012).

Sparks then filed a federal habeas petition as well as a successive state court petition. The federal court stayed and abated Sparks's petition pending the resolution of his state court petition. The state court dismissed the application as an abuse of the writ, and Sparks returned to federal court and filed an amended petition seeking federal habeas relief. After reviewing Sparks's petition, the district court denied relief. Sparks now appeals the district court's ruling and seeks a COA from this court.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a state court prisoner must obtain a COA before appealing a federal district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1)(A). A COA is warranted upon a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue only when the prisoner shows that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right . . . *and* whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000) (emphasis added). The "threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003). The question for the appellate court is whether "reasonable jurists could debate whether (or, for that matter, agree that)" the district court should have handled the issues differently. *Miller-El,* 537 U.S. at 336, 123 S. Ct. at 1039. In cases involving the death penalty, "any doubts as to

No. 18-70013

whether a COA should issue must be resolved in [the petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000) (citation omitted).

AEDPA's standard for habeas petitions from state court judgments is highly deferential and demands that state court judgments "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010). To prevail, the petitioner must prove that the adjudication by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under AEDPA, it is not enough that a federal habeas court would reach a different conclusion than the state court. *Williams v. Taylor*, 529 U.S. 362, 411, 120 S. Ct. 1495, 1522 (2000).

This court reviews a district court's denial of evidentiary hearings or discovery for an abuse of discretion. *Clark v. Johnson*, 202 F.3d 760, 765 (5th Cir. 2000).

## DISCUSSION

Sparks advances several theories in support of his petition for a COA. This court examines each in turn.

### 1.    Eighth Amendment and Due Process Objections

Sparks's first objection is that his Eighth Amendment and Due Process rights were violated by materially inaccurate testimony of the state's expert witness during sentencing. Sparks argues that the state's expert witness, A.P. Merillat, "falsely told the jury that Sparks would initially be classified as a G-3 prisoner when arriving to prison, in spite of his past record or any other factors." This error in testimony, Sparks contends, led jurors to impose the death penalty based on unfounded fears that Sparks would be violent when incarcerated among the general prison population if he received life without

4

parole.  The testimony in question was inaccurate as first stated, but, as the district court noted, the inaccuracy of Merillat's testimony was corrected by Merillat during cross-examination by Sparks's defense attorney.  Sparks argues that the correction was insufficient and the jury was nevertheless left with a false impression due to Merillat's ambiguous further comment in cross-examination.

Because Sparks failed to raise this claim on direct appeal or in his initial state habeas proceedings, the federal court stayed its consideration of the claim while Sparks raised it in subsequent state habeas proceedings.  The state court dismissed Sparks's subsequent application as an abuse of the writ without addressing the merits of his claim.  The district court then held that Sparks's claim was procedurally barred from federal review and, alternatively, that it lacked merit because Sparks failed to prove that Merillat's testimony was materially false.  The district court rejected Sparks's request for a cause and prejudice exception to his procedural default for substantially the same reasons that the claim itself was without merit.

Sparks argues here that his claim for a due process violation and suppression of evidence violative of *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194 (1963), satisfies the cause and prejudice standard to overcome the procedural bar.  Because the merits analysis of Sparks's false testimony claim largely parallels the "cause" threshold he must clear, it is permissible to consolidate both issues into a single inquiry.  *See Banks v. Dretke*, 540 U.S. 668, 686, 124 S. Ct. 1256, 1269 (2004).

"A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation."  *Davila v. Davis*, 137 S. Ct. 2058, 2064-65 (2017) (internal quotation marks and citation omitted).  To establish "cause,"

the prisoner "must show that that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 2065 (internal quotation marks and citation omitted). A factor is only considered external to a prisoner's defense "if it cannot fairly be attributed to the prisoner." *Id.* (internal quotation marks and citation omitted).

Here, Sparks's claim centers around the allegedly-false testimony of the state's expert witness. Parsing the testimony for signs that the jury may have been confused or misinformed is unnecessary in this case, however, because it is undisputed that all parties were aware of Merillat's testimony—the alleged "cause" in this case—while it was happening. Indeed, Sparks's defense attorney focused on correcting Merillat's testimony during his cross examination. To the extent that the testimony may have been inaccurate, therefore, Sparks can hardly claim that he was unaware of its inaccuracy. Thus, because there is ample evidence that Sparks was aware of the allegedly-false testimony, Sparks cannot show that his failure to raise the issue at the state level was caused by some external factor that could not fairly be attributed to him. As such, reasonable jurists could not debate the district court's refusal to grant Sparks a cause-and-prejudice exception to surmount the procedural bar, and no COA is warranted on this issue.

## 2.    Evidentiary Hearing and Discovery Objections

From the foregoing discussion, it follows that no COA should be granted on the district court's refusal to order discovery and an evidentiary hearing on the alleged falsity of Merillat's testimony. Of course, a district court has discretion to order an evidentiary hearing on a state habeas case only if it is not barred from doing so by 28 U.S.C. § 2254(e)(2). *Schiro v. Landrigan*, 550 U.S. 465, 468, 127 S. Ct. 1933, 1937 (2007). Although the claims asserted by Sparks in this connection might, if substantiated, satisfy a portion of that provision, Sparks did not attempt to prove "by clear and convincing evidence

that but for the constitutional error[s], no reasonable factfinder" would have sentenced him to death.  Section 2254(e)(2)(B).

Sparks also requested leave to subpoena the files of the Dallas County District Attorney's office to gather information to support his Merillat claim. A habeas petitioner may obtain leave to conduct discovery when he provides the court with "specific allegations" and there is "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy v. Gramley*, 520 U.S. 899, 908-09, 117 S. Ct. 1793, 1799 (1997) (internal quotation marks and citation omitted).  In other words, a petitioner seeking to conduct discovery must make a prima facie case that discovery is warranted.  *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000)(citing Rule 6 of the Federal Rules governing Section 2254 cases).

Sparks's claim revolves entirely around the jury's possible misperception of Merillat's testimony during the punishment stage of his trial.  As stated above, there is not ground for debating procedural default or the underlying claim that Merillat's testimony was false.  Sparks does not explain how the files he requested might support his claim that Merillat's testimony—all of which is contained in the record—violated his constitutional rights.  "Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review." *Strickler v. Greene*, 527 U.S. 263, 286, 119 S. Ct. 1936, 1950-51 (1999). Sparks's discovery request was based upon mere speculation.

Reasonable jurists could not debate that the district court did not abuse its discretion by denying the subpoena request or refusing an evidentiary hearing.

## 3.    Right to an Impartial Jury

Sparks next asserts that his right to an impartial jury was violated.  He presents several reasons for this assertion, laid out in two separate claims.

No. 18-70013

Sparks's first claim is that the necktie worn by the bailiff at his sentencing unfairly prejudiced the jury against him because it was emblazoned with a large, white syringe.  The bailiff admitted that the purpose of the tie was to signal his support for the death penalty.  Specifically, on request of defense counsel to the court, the bailiff took measures to partially conceal the tie from the view of jurors, and Sparks could not prove that a single juror saw the tie, much less was influenced by seeing it.  The district court dismissed the claim, holding that the state court's determination of the facts, after a hearing at which several witnesses testified, was not unreasonable.    28 U.S.C. § 2254(d)(2).

The Supreme Court has held that a juror is exposed to an external influence when he receives information that has not been introduced into evidence.  *Tanner v. United States*, 483 U.S. 107, 117, 107 S. Ct. 2739, 2746 (1987).  When allegations of improper influence arise in the habeas context, as opposed to direct appeal, this court reviews them under the "substantial and injurious effect" standard set forth by the Supreme Court in *Brecht v. Adamson.  See Oliver v. Quarterman,* 541 F.3d 329, 341 (5th Cir. 2008) (citing *Brecht v. Adamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1722 (1993)).

After an evidentiary hearing in Sparks's state habeas proceedings, the state court concluded that the tie was partially obstructed from view and that Sparks had not proven that any jurors saw the tie.  The district court deferred to the state court's factual determinations—as prescribed by AEDPA—and rejected Sparks's claim.  The district court's determinations under AEDPA and governing law are not reasonably debatable on this issue.

Sparks also alleges that he was denied his right to an impartial jury trial by audience disruptions.  Sparks argues that "repeated instances of audience disruptions" improperly influenced the jury during the sentencing phase,

including one instance in which the father of one of Sparks's victims charged at Sparks while wearing a shirt displaying a photo of his deceased son.

The district court denied relief, ruling that the state court's decision to continue the sentencing phase after audience disruptions was not contrary to clearly-established law as defined by the Supreme Court. Sparks appeals that decision but cites no case in which the Supreme Court has held that disruptive conduct by spectators requires a mistrial or any other judicial act. In fact, as the district court noted, the Court explicitly stated that it has never addressed the issue. *Sparks v. Davis*, No. 3:12-CV-469-N, 2018 WL 1509205, at *9 (N.D. Tex. Mar. 27, 2018) (citing *Carey v. Musladin*, 549 U.S. 70, 76, 127 S. Ct. 649, 653 (2006) ("This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived the defendant of a fair trial.")). Therefore, the district court's determination that the state courts did not unreasonably apply the law under Section 2254(d)(1) is not itself reasonably debatable.

Nor is Sparks's claim to relief under Section 2254(d)(2) for spectator misconduct, which was rejected by the district court, reasonably debatable. Sparks's brief includes conclusory statements alleging that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence," but it does not specify any meaningful facts or evidence that render the district court's determination unreasonable.

In sum, Sparks is not entitled to a COA for either claim.

### 4.     Cumulative Error

Sparks also raises an objection predicated on the theory that the cumulative effect of the image on the bailiff's tie and the outbursts from the audience created a "mob domination" atmosphere that deprived him of his

right to an impartial jury. The district court held this claim to be both meritless and procedurally defaulted.

Sparks cites a pre-AEDPA case, *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992) (en banc), as support for his contention that the district court erred in its ruling. With regard to exhaustion of remedies, however, the post-AEDPA controlling precedent in this court is *Nickelson v. Stephens*, 803 F.3d 748 (5th Cir. 2015). *Nickelson* held that cumulative error claims not presented to the state courts are barred as unexhausted. 803 F.3d at 753. Because Sparks failed to raise this claim in state court proceedings, the district court held that the claim is procedurally barred.

The district court alternatively held that Sparks's cumulative error argument was meritless. Sparks does not even mention this holding on appeal. He has failed to show that the district court's decision on this issue was debatable.

## 5.    Objection to Texas's Capital Sentencing Scheme

Finally, Sparks challenges the constitutional validity of Texas's capital sentencing scheme under *Apprendi*. Sparks argues that the state's sentencing scheme is unconstitutional because the jury was not required to conclude beyond a reasonable doubt that no mitigating factors existed to warrant a life sentence instead of death. This claim is both factually inaccurate in this instance and is also foreclosed by circuit precedent. The jury did indeed conclude beyond a reasonable doubt that no mitigating factors existed in Sparks's case. Furthermore, this court has already held that "[n]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." *Rowell v. Dretke*, 398 F.3d 370, 375-77 (5th Cir. 2005).

Sparks argues that *Hurst v. Florida*, 136 S. Ct. 616, 622 (2016), now requires this court to apply *Apprendi* to Texas's capital sentencing law. This

court has consistently rejected that claim. *See, e.g., Garcia v. Davis*, 704 F. App'x 316, 324 (5th Cir. 2017). Thus, because *Rowell* remains controlling precedent in this court, and *Rowell* upheld the validity of Texas's capital sentencing scheme, Sparks's challenge to Texas's capital sentencing scheme is foreclosed by circuit precedent. The district court's ruling is not reasonably debatable.

## CONCLUSION

For the foregoing reasons, the Petitioner's COA request is **DENIED.**